OPINION
{¶ 1} Defendant-appellant, Steven L. Phillips ("Steve"), appeals the judgment decree of divorce issued by the Ashtabula County Court of Common Pleas on June 5, 2006. Phillips challenges the trial court's division of property and its award of custody of Daniel C Phillips, to plaintiff-appellee, Sandra K. Phillips ("Sandy"). We reverse the decision of the trial court, and remand for proceedings consistent with our opinion.
 {¶ 2} Steve and Sandy were married on June 22, 1985, in Geneva, Ohio. One child, Daniel (d.o.b. 2/9/1989) was born as issue of the marriage. *Page 2 
 {¶ 3} At the time the parties were married, Sandy was employed by the Ashtabula County Department of Job and Family Services (ACDJFS). In February of 1991, Steve and Sandy mutually agreed that she would remain at home to care for Daniel. Steve, a welder by trade, first worked for Ayrshire Construction, and then, for Bentley Excavating. In 1990, Steve began working full time at Phillips Son Welding Fabricating, the business started by his grandfather in 1937. Phillips Son, located at 6720 South Ridge Road, West, in Harpersfield Township, Ashtabula County, Ohio, is a welding and steel fabrication business. The business assets consist of a 10,000 square foot building located on ten acres of property, various steel fabricating and welding machines and trucks.
 {¶ 4} When Steve took over operations of Phillips Son in 1990, the business was faltering due to his father, Richard's, failing health. In order to aid her husband, Sandy began working in the office at Phillips Son, primarily as a secretary and bookkeeper, for which she received no salary. In addition, Sandy would occasionally work other part-time jobs, both paid and unpaid, to assist financially and to gain bookkeeping skills. As a result of one of her jobs, her employer, in lieu of cash payment, gave her a computer which was used in the business for billing and recordkeeping. Besides Steve, the only other full-time employee is Ed Powell, a certified welder, who has worked for Phillips Son since 1994.
 {¶ 5} On June 5, 1992, Steve's father, Richard, who was in ill health, transferred the business, along with an approximately 6 acre parcel on which the building was situated, to Steve and Sandy via a bill of sale and a joint and survivorship deed, respectively. Later, Richard transferred an additional 4 acre parcel, adjacent to the *Page 3 
business to Steve and Sandy, which was merged with the aforementioned 6 acre property. At trial, the parties stipulated that the appraised value of the business, exclusive of the real property, was $48,000.
 {¶ 6} When Daniel started school and as the business grew, Sandy increased her hours at Phillips Son to approximately 25 per week. Steve, on the other hand, typically worked 80-90 hours per week.
 {¶ 7} On July 28, 1998, the couple purchased a 36 acre farm, located at 6630 South Ridge Road, West, in Harpersfield Township, Ohio, for $199,800. The farm was purchased largely with the proceeds from the sale of their prior home, which was purchased jointly in 1982, prior to the marriage. Currently, the farm carries a mortgage balance between $45,000 and $55,000, with a monthly payment of $650.00, not including taxes or insurance. The parties stipulated that the current appraised value of the farm is $218,000.
 {¶ 8} In addition to the aforementioned assets, the couple held two savings accounts with A.G. Edwards Company in the name of Phillips Son and Steve and Sandra Phillips, respectively (the A.G. Edwards accounts). The couple also held two joint checking accounts at Andover Bank, one in the name of Phillips Son and one in the name of Steve and Sandy Phillips. Both Steve and Sandy had access to all of the aforementioned accounts at all relevant times.
 {¶ 9} Over the ensuing years, the marriage began to deteriorate. Steve's long hours at work and his drinking became an issue. Sandy maintained, and it was not disputed by Steve, that part of his time spent at the shop was spent drinking beer with his friends. In November, 2001, Steve was arrested for and convicted of Driving Under *Page 4 
the Influence. Eventually a dispute arose between them regarding the finances of the business.
 {¶ 10} On February 25, 2002, Sandy returned to work at the ACDJFS, at an approximate salary of $25,000 per year.
 {¶ 11} Between February and March of 2002, Sandy made a series of withdrawals from the aforementioned A.G. Edwards accounts, withdrawing $63,726.41 from the Phillips Son account and $9,369.87 from the couple's joint savings account. The proceeds from these accounts, with the exception of the remaining balances of approximately $500 in each, were subsequently transferred to the couple's joint bank account at Andover Bank, along with the proceeds from one of Sandy's paychecks with ACDJFS, in the amount of $1,189.90.
 {¶ 12} In turn, Sandy made a series of withdrawals from the Andover Bank account, from March 16, 2002, through April 8, 2002, totaling $53,536.18. These withdrawals were converted into a series of cashier's checks, which Sandy held in her possession, one of which was cashed and deposited into an account at FirstMerit Bank in Sandy's name.
 {¶ 13} In March, 2002, Sandy removed the computer containing the business records from the office at Phillips Son and relocated it to the marital home.
 {¶ 14} On April 5, 2002, Sandy filed a complaint for divorce in the Ashtabula County Court of Common Pleas, alleging Incompatibility, Gross Neglect of Duty, and Extreme Cruelty. On the same date, Sandy filed a motion for a restraining order against Steve preventing him from disposing of marital assets, a motion for temporary custody of Daniel, and a motion for spousal and child support pendente lite. On the same date, *Page 5 
the trial court granted the restraining order against Steve, subsequently causing him to move from the marital home to his mother's home, located at 6748 South Ridge Road, West, in Harpersfield Township.
 {¶ 15} On April 18, 2002, Steve filed his answer and counterclaim, alleging Incompatibility, and seeking an equitable division of the marital property and custody of Daniel. On the same date, Steve filed a motion for immediate ex parte restraining orders against Sandy, and an order requesting an immediate accounting of the funds removed from the A.G. Edwards accounts, and an order requiring Sandy to physically return the computer and the books and records of Phillips Son to the business. These orders were granted by the trial court on April 23, 2002.
 {¶ 16} On July 24, 2002, the parties entered into an Agreed Judgment Entry regarding temporary matters relative to parental rights, support obligations, and the operation of Phillips Son. The agreement provided, in relevant part, as follows:
 {¶ 17} "1. That the parties will employ for bookkeeping record maintenance, billing and other accounting purposes for Phillips and Sons [sic] Welding and Fabricating the office of Paul Demshar, CPA, of Ashtabula, Ohio.
 {¶ 18} "2. [Sandy] shall provide to [Steve] all mail relating to Phillips and Sons [sic] * * * on a prompt basis and shall cause to be deposited in the business checking account any funds received for or on behalf of the business, with notice thereof to be provided to the office of Paul Demshar and [Steve].
 {¶ 19} "3. That [Sandy] shall not, without notice and permission from [Steve] enter the Phillips and Sons [sic] Welding and Fabricating Business and [Steve] shall not, without notice and permission from [Sandy], enter upon the marital premises * * *." *Page 6 
 {¶ 20} "4. That [Steve] is granted privileges of visitation with the parties' minor child in accordance with the standard order of visitation. [Steve] shall notify [Sandy] directly or, in her absence, leave word with his mother as to occasions when he departs from the business or his home premises with the parties' minor child.
 {¶ 21} "5. That [Steve] shall pay on behalf of plaintiff all of her household expenses, including mortgage, utilities, repairs, taxes, maintenance and insurance associated with the real estate occupied by [Sandy] and the parties' minor child.
 {¶ 22} "6. That each party shall, in good faith, advise the Offices of Paul Demshar of all Phillips and Sons [sic] Welding and Fabricating business transactions, expenses and income, and each party shall make available any records, access to premises or other actions necessary to permit a prompt and thorough appraisal of all assets of the parties.
 {¶ 23} "7. The checks for funds in the possession of [Sandy] resulting from the withdrawal from A.G. Edwards and Sons shall be returned to the parties' accounts at A.G. Edwards and Sons, with neither party to cause withdrawal of same without joint written agreement or order of this court. [Sandy] shall retain the funds in the FirstMerit account subject to accounting for same to the court and [Steve] shall account for withdrawn Andover Bank funds to the court."
 {¶ 24} The matter was subsequently set for trial before the magistrate on January 20, 2005, and proceeded over three hearing dates, ending on June 2, 2005. In addition, the magistrate conducted an in camera interview with Daniel on June 9, 2005.
 {¶ 25} Undisputed evidence at trial established that neither Steve nor Sandy honored the agreed judgment. Steve did not pay any of the household expenses, as *Page 7 
ordered. Sandy did not return business records to Steve as ordered. In addition, from April 22, 2002, until July 18, 2003, Sandy received and cashed checks made out to Phillips Son in the total amount of $7,557.82, which she applied toward her expenses.
 {¶ 26} On July 7, 2005, the magistrate issued her decision. Both Steve and Sandy filed objections to the magistrate's decision. On December 13, 2005, Steve filed a motion to show cause as to why Sandy should not be held in contempt for refusing to honor the agreed order with regard to his parenting time. On December 30, 2005, the trial court held a hearing on the parties' objections to the magistrate's decision.[1] On April 20, 2006, the trial court adopted the magistrate's decision in full.
 {¶ 27} It is from this judgment that Steve timely appealed, assigning the following as error for our review:
 {¶ 28} "[1.] The trial court erred when it ordered appellant to pay the remaining household mortgage as well as an additional amount to reimburse appellee the expenses he was ordered to pay on behalf of appellee and the parties' minor child, pendente lite.
 {¶ 29} "[2.] The trial court erred when valuing the business property of the parties.
 {¶ 30} "[3.] The trial court erred when utilizing appellee's expert's valuation of scrap metal and other items of personal property located at the family business property.
 {¶ 31} "[4.] The trial court erred in awarding custody of the parties' minor child to appellee." *Page 8 
 {¶ 32} "When reviewing an appeal from a trial court's decision to accept or reject a magistrate's decision, an appellate court must determine whether the trial court abused its discretion." Hayes v.Hayes, 11th Dist. No. 2005-L-138, 2006-Ohio-6538, at ¶ 10 (citation omitted). "The term `abuse of discretion' connotes more than an error of law or judgment; it implies that the court's attitude was unreasonable, arbitrary or unconscionable." Blakemore v. Blakemore (1983),5 Ohio St.3d 217, 219. Moreover, "[i]f there is some competent, credible evidence to support the trial court's decision, there is no abuse of discretion," and furthermore, the trial court's decision will not be found to be against the manifest weight of the evidence. Middendorf v.Middendorf, 82 Ohio St.3d 397, 401, 1998-Ohio-403, citing Ross v.Ross (1980), 64 Ohio St.2d 203, 204-205.
 {¶ 33} In his first assignment of error, Steve argues that the trial court erred and abused its discretion in its division of marital property. Steve first argues that the provision of the July 24, 2004 agreed judgment entry requiring that Sandy return the amounts she removed from the couple's joint A.G. Edwards accounts, along with the $7,557.82 in receivables, created an implied condition precedent which must be satisfied before he became obligated to pay household expenses. We disagree.
 {¶ 34} It is well-settled that "[a]n agreed judgment entry is a contract that is reduced to judgment by a court." Sovak v. Spivey,155 Ohio App. 3d 479, 2003-Ohio-6717, at ¶ 25, citing Spercel v. SterlingIndustries, Inc. (1972), 31 Ohio St.2d 36, 39, see also Najarian v.Kreutz (Aug. 31, 2001), 6th Dist. No L-00-1302, 2001 Ohio App. LEXIS 3887, at *9 ("Where the parties to a divorce * * * enter into settlement through an agreed judgment entry, the law of contract applies") (citation omitted). Thus, an agreed *Page 9 
judgment entry is subject to the same rules of construction as a contract, in which common, unambiguous words will be given their ordinary meaning, unless some other meaning is clearly suggested from the face or overall contents of the agreement. Ronyak v. Ronyak, 11th Dist. No. 2001-G-2383, 2002-Ohio-6698, at ¶ 10 (citation omitted).
 {¶ 35} "A condition precedent is a condition which must be performed before the obligations in the contract become effective." Troha v.Troha (1995), 105 Ohio App.3d 327, 334 (citation omitted). "Essentially, a condition precedent requires `that an act must take place before a duty of performance of a promise arises. If the condition is not fulfilled, the parties are excused from performing, and the [agreement] becomes null and void." Fortune v. Fortune (May 3, 1991), 2nd Dist. No. 90-CA-96, 1991 Ohio App. LEXIS 1967, at *11. Whether a provision in an agreed judgment entry is a condition precedent depends on the intent of the parties, which is ascertained by considering the language of the particular provisions in question within the entire context of the agreement. Troha, 105 Ohio App.3d at 334.
 {¶ 36} In the case sub judice, the relevant portions of the agreed judgment entry are contained in paragraphs two, five, and seven, which provide as follows:
 {¶ 37} "2. [Sandy] shall provide to [Steve] all mail relating to Phillips and Sons * * * on a prompt basis and shall cause to be deposited in the business checking account any funds received for or on behalf of the business, with notice thereof to be provided to the office of Paul Demshar and [Steve]. *Page 10 
 {¶ 38} "5. That [Steve] shall pay on behalf of plaintiff all of her household expenses, including mortgage, utilities, repairs, taxes, maintenance and insurance associated with the real estate occupied by [Sandy] and the parties' minor child.
 {¶ 39} "7. The checks for funds in the possession of [Sandy] resulting from the withdrawal from A.G. Edwards and Sons shall be returned to the parties' accounts at A.G. Edwards and Sons, with neither party to cause withdrawal of same without joint written agreement or order of this court. [Sandy] shall retain the funds in the FirstMerit account subject to accounting for same to the court and [Steve] shall account for withdrawn Andover Bank funds to the court."
 {¶ 40} It is undisputed that neither of the parties honored the relevant conditions of the agreed judgment entry. However, as evident from the plain language of these terms, there is no language to indicate that Steve's payment of Sandy's household expenses, in lieu of providing support payments, was contingent upon either Sandy's return of the funds withdrawn from the A.G. Edwards accounts, nor the return of any payments made on behalf of the business, which, at the time of the agreed judgment entry, amounted to $300. Moreover, despite some evidence of difficulties involved in running the business, including the loss of two major clients, there was no evidence in the record to show that Phillips Son was unprofitable or that appellant would have been unable to meet his obligations. Moreover, there was substantial competent and credible evidence to show that Sandy used the funds withdrawn from the A.G. Edwards accounts to pay the household expenses not paid by Steve. Accordingly, we find Steve's first argument under his first assignment of error to be without merit. *Page 11 
 {¶ 41} Steve next argues that the trial court's adoption of the magistrate's division of marital property was plain error requiring reversal of the court's judgment, since the magistrate failed to "include certain assets and values clearly demonstrated by the evidence." In particular, Steve argues that the trial court's failure to include approximately $2,400 in gas well proceeds received by Sandy during the three years of litigation, her profits from the sale of hay from the farm, the failure to account for $340 taken from the couple's joint checking account and $2,600 taken from the "All Steel Building Account," constituted plain error requiring reversal.
 {¶ 42} As an initial matter, we note that, in regard to civil cases, the plain error doctrine applies only "in the extremely rare cases involving exceptional circumstances where error, to which no objectionwas made at the trial court, seriously affects the basic fairness, integrity, or public reputation of the judicial process, thereby challenging the legitimacy of the underlying judicial process itself."Goldfuss v. Davidson, 79 Ohio St.3d 116, 1997-Ohio-401, at syllabus. In the case sub judice, Steve timely and specifically objected to the magistrate's findings of fact and conclusions of law regarding the aforementioned matters, as required by Civ.R. 53(D)(3)(b). Thus, the plain error doctrine does not apply.
 {¶ 43} It is well-settled that trial courts have "broad discretion to determine what property division is equitable in a divorce proceeding."Cherry v. Cherry (1981), 66 Ohio St.2d 348, at paragraph two of the syllabus. Thus, "a trial court will only reverse such [property divisions and] distributions if the trial court abused its discretion."Crawford v. Crawford (Dec. 31, 1991), 11th Dist. No. 90-A-1555, 1991 Ohio App. LEXIS 6340, at *5. Moreover, "[t]here is no presumption * * * that marital property be divided equally upon *Page 12 
divorce; rather a potentially equal division should be the starting point of the trial court's analysis." Cherry, 66 Ohio St.2d 348, at paragraph one of the syllabus.
 {¶ 44} The Ohio Revised Code defines "marital property" alternatively as "[a]ll real or personal property that currently is owned by either or both of the spouses * * * and that was acquired by either or both of the spouses during the marriage," or "all interest that either or both of the spouses currently has in any real or personal property." R.C.3105.171(A)(3)(a)(i) and (ii). "During the marriage," means either "the period of time from the date of the marriage through the date of the final hearing in an action for divorce or in an action for legal separation;" or "[i]f the court determines that the use of either [of these dates] would be inequitable, the court may select dates that it considers equitable in determining marital property. If the court selects dates that it considers equitable * * *, `during the marriage' means the period of time between those dates selected and specified by the court." R.C. 3105.171(A)(2)(a) and (b).
 {¶ 45} In the instant matter, both the magistrate and the trial court determined that "during the marriage" was the period between "June 22, 1985 and April 5, 2002, the approximate date of separation." Steve did not challenge this finding, thus April 5, 2002, is the end date of the marriage for the purposes of determining the division of real property.
 {¶ 46} In the final divorce decree dividing marital assets, the trial court awarded the family farm to Sandy and Phillips Son to Steve, consistent with the possessory arrangement that existed during the pendency of the marriage.
 {¶ 47} Taking this into account, Steve was not entitled to any royalty payments from the gas well located on the farm made during the pendency of the divorce, since *Page 13 
these payments became Sandy's separate property after April 5, 2002. Despite the fact that there was no evidence of proceeds from hay sales during this period, such proceeds, if any, would have been Sandy's separate property for the same reason as above.
 {¶ 48} Regarding the four separate garage sales Sandy held, there was no evidence that any of the items sold belonged either to Steve, or were household goods owned jointly by the parties.
 {¶ 49} Although Steve testified to a $19,000 loan borrowed from "a friend" for the operation of Phillips Son during the pendency of the proceedings, he offered no evidence, in the form of a promissory note or any other documentation, supporting his testimony. Thus, there is no evidence of exactly when this loan was made, or by whom it was made, other than that Steve borrowed the money after the date of the separation. Thus, the trial court did not abuse its discretion by not including the alleged debt in the property division.
 {¶ 50} The $340 withdrawal by Sandy from the Phillips Son's checking account on May 11, 2004, and her withdrawal on May 11, 2004, of $2,607.77 from the All Steel Building Systems Account[2] at Andover Bank present another matter. Sandy does not dispute that she made these withdrawals, or the fact that these accounts constituted joint assets acquired during the marriage. Thus, these two assets constituted marital property. *Page 14 
 {¶ 51} A review of the magistrate's decision allocating marital property reveals that the trial court's judgment did not include these withdrawals in her calculation of money taken from the bank by Sandy. Thus, this figure, which was used to determine the allocation of the marital property was understated by $2,947.77.
 {¶ 52} It is well-settled that "[a] divorce decree which does not dispose of all the property involved in the settlement between the parties is insufficient and incomplete." Rowe v. Rowe (1990),69 Ohio App.3d 607, 613; James v. James (1995), 101 Ohio App.3d 668, 682;Zeefe v. Zeefe (1998), 125 Ohio App.3d 600, 609. Moreover, "[i]f a trial court leaves issues unresolved, the case must be remanded for the court to determine." Zeefe, 125 Ohio App.3d at 609, citing Taylor v.Taylor (1981), 2 Ohio App.3d 79, at paragraphs one and two of the syllabus (emphasis added); Quinn v. Paras (Dec. 7, 2000), 8th Dist. No. 77253, 2000 Ohio App. LEXIS 5726, at *6;
Brooks v. Brooks (Oct. 12, 2000), 8th Dist. No. 77927, 2000 Ohio App. LEXIS 4785, at *4; Cf. Ortiz v. Ortiz, 7th Dist. No. 05 JE 6,2006-Ohio-3488, at ¶ 20. ("In a divorce case, the trial court has jurisdiction over [the distribution of] all marital and separate property of the parties, as stated in R.C. § 3105.171(B).") (emphasis added).
 {¶ 53} Based on the foregoing, we conclude that the trial court abused its discretion by failing to consider the aforementioned withdrawals in the division of marital property. For this reason, Steve's second argument under his first assignment of error has merit, and the matter must be remanded to the trial court for distribution of the aforementioned funds.
 {¶ 54} Since Steve's second and third assignments of error challenge the trial court's valuation of certain property distributed in the divorce settlement, they will be *Page 15 
addressed together. In his second assignment of error, Steve argues that the trial court erred and abused its discretion by adopting the magistrate's finding that the plaintiffs expert's valuation was the proper valuation to be assigned to Phillips Son's real property awarded to him in the divorce. In his third assignment of error, Steve argues that the trial court erred in adopting plaintiff's expert's valuation of certain items of personal property. We disagree.
 {¶ 55} Steve first argues that the cost of "remediation" should be credited to reduce the value assigned to Phillips Son's real property, since removal of scrap and waste oil from the property would be necessary to allow for its "highest and best use," i.e., residential use. In essence, Steve is arguing that the trial court's acceptance of the valuation offered by Sandy's expert, Andrew Leirer, was against the manifest weight of the evidence. As stated earlier, "judgments supported by some competent, credible evidence * * * will not be reversed by a reviewing court as being against the manifest weight of the evidence."CE. Morris Co. v. Foley Constr. Co. (1978), 54 Ohio St.2d 279, at syllabus.
 {¶ 56} At trial, Leirer, a certified real estate appraiser, who has performed between 200 to 400 residential and commercial appraisals each year for a period of ten years, testified that zoning on Phillips 
Son's property had been changed from commercial to residential by the township, but that it was subject to a grandfathered, non-conforming use. Based upon this existing non-conforming use, Leirer determined that the fair market value of the property was $175,000. Leirer testified that the "highest and best use" of the property "as vacant" would be "residential because of the change in zoning." However, Leirer further testified that "[t]he highest and best use as currently *Page 16 
improved [would] be continued use as an industrial, commercial building." The magistrate adopted Leirer's valuation of $175,000 for the purpose of determining her division of the marital property.
 {¶ 57} Other than Leirer's testimony of the value of the property as presently used, no witness offered any evidence as to what the value of the property might be if the building was razed and the debris removed. Steve offered the testimony of Joseph E. Kozlowski, who estimated that the demolition of the existing building and the removal of the building debris and other debris on the property would cost $48,500, but this alone is insufficient to support a different valuation for the property, particularly when Steve's own testimony manifests a continuing intention to operate Phillips and Son as a viable business on the property under the current zoning variance. See Kapp v. Kapp, 2nd Dist. No. 2003-CA-9,2005-Ohio-6830, at ¶ 41 (a trial court does not abuse its discretion by failing to consider selling costs in valuing a property when there is no indication that the owner is going to sell the property or terminate its present use in the foreseeable future); Baker v. Baker (1992),83 Ohio App.3d 700, 705.
 {¶ 58} For these reasons, we conclude that trial court's adoption of the magistrate's valuation of Phillips Son's real property was supported by competent, credible evidence, and thus, not an abuse of discretion.
 {¶ 59} With regard to Steve's third assignment of error, he argues that the magistrate erred and the trial court abused its discretion by adopting Sandy's expert's valuation of certain personal property on the Phillips and Son's premises rather than adopting his own valuations, which he claims are based upon his 20 years experience in the steel industry. We disagree. *Page 17 
 {¶ 60} In his objections to the magistrate's decision, Steve stated as follows:
 {¶ 61} "Pamela Morse, who did the valuation for plaintiff, is acknowledged to have been out of her field of expertise and to have consulted various others who did not testify at trial regarding various valuations for pieces of scrap and other items with negligible or no value. Merely to accept the Morse evaluation for purposes of pricing the items of personal property was inappropriate and flies in the face of accepted law that a party can know the value of their property."
 {¶ 62} In her testimony Morse stated that she is an appraiser for an auction company with fifteen years of experience and performs approximately 30 to 50 appraisals of personal property per year. She stated that she was called upon to complete an appraisal for the purpose of the Phillips divorce case. Morse provided an exhibit listing the property in question along with her valuations, and explained the methods by which the property was valued. Thus, there was competent and credible evidence to support Morse's valuations of the personal property located at Phillips Son.
 {¶ 63} Steve's argument regarding the valuation of "various * * * pieces of scrap and other items with negligible or no value," must be rejected, because he failed to properly preserve this issue for appeal. In his objections to the magistrate's decision, Steve never alerted the trial court to any specific items on the Morse valuation that he alleged were improperly valued, and offered no alternative valuations.
 {¶ 64} It is well-settled that "general objections are insufficient under Civ.R. 53 * * * to preserve an issue for appeal." Dunn v. Dunn, 2nd Dist. No. 05-CA-104, 2006-Ohio-4649, at ¶ 26; see also, Lambert v.Lambert, 11th Dist. No. 2004-P-0057, 2005-Ohio- *Page 18 
2259, at ¶ 16 ("When a party submits general objections that fail to provide * * * factual support, `the trial court may affirm the magistrate's decision without considering the merits of the objection.'") (citations omitted).
 {¶ 65} Thus, the trial court was entitled to accept the Morse evaluation as written, and did not abuse its discretion by adopting the magistrate's decision which adopted Morse's valuation of the personal property.
 {¶ 66} Steve's second and third assignments of error are without merit.
 {¶ 67} In his fourth assignment of error, Steve argues that the trial court erred by awarding custody of Daniel to Sandy. The record reveals that Daniel turned eighteen years of age during the course of this appeal. Although R.C. 3103.03(B) states that the parental duty of support continues beyond the age of majority "as long as the child continuously attends on a full-time basis any recognized and accredited high school," at oral argument, the parties agreed to waive this issue because Daniel's high school graduation was imminent. Accordingly, we will not address it.
 {¶ 68} Steve's fourth assignment of error is, therefore, moot.
 {¶ 69} For the foregoing reasons, Steve's first assignment of error is sustained, as it relates to the cash balance which resulted in the allocation of the marital property being understated by $2,947.77. We reverse and remand the trial court's judgment solely on this basis for proceedings consistent with this opinion. All other assignments of error are overruled.
MARY JANE TRAPP, J., concurs,
WILLIAM M. O'NEILL, J., dissents.
[1] A transcript of the December 30, 2005 hearing on the objections has not been provided to this court.
[2] According to Sandy's testimony, All Steel Building Systems was a small business formed during the marriage, for the purpose of erecting steel buildings. Steve and Sandy formed the company because they decided it might be advantageous to "have a woman-owned business." Pursuant to the startup of this business, the couple deposited approximately $2,500 in marital funds into a business account at Andover Bank. It is undisputed that the business never actually operated. It is further undisputed that Sandy closed out the account on May 11, 2004, by withdrawing $2,607.77 from the account, and using the funds for personal expenses. *Page 1