OPINION
{¶ 1} Defendant-appellant, Daniel Lee Helman, Jr., appeals the judgment of the Trumbull County Court of Common Pleas, Domestic Relations Division, terminating his marriage to plaintiff-appellee, Karen Helman, and dividing the marital estate. For the following reasons, we affirm the decision of the court below. *Page 2 
 {¶ 2} Daniel and Karen Helman were married on July 2, 1994, in Saltzburg, Pennsylvania. Two children were born as issue of the marriage: Alexa, born September 5, 1998, and Ashton, born January 24, 2001. The parties established their marital residence at 5511 Pierce Road, Warren, Ohio. In addition to the marital residence, the parties owned a condominium in Kissimmee, Florida, and commercial property in Homer City, Pennsylvania, on which a bar/restaurant was operated with an apartment located on the second floor.
 {¶ 3} On July 14, 2004, Karen filed a complaint for divorce. Over the course of the next two years, the parties were engaged in various disputes regarding discovery, custody, and support.
 {¶ 4} On June 13, 2005, the court issued a Magistrate's Order authorizing the parties to "list [for] sale the bar, condo, and real estate occupied by the bar on terms conditions mutually agreed to by the parties counsel."
 {¶ 5} On October 24, 2005, Lee Daniels, Inc. and Rewst Inn were added as third party defendants on the grounds that these entities have an interest in or control of assets within the proprietary jurisdiction of the court. Lee Daniels was the corporation that operated the bar/restaurant business on Homer City property.
 {¶ 6} In 2006, the condominium property was sold and the proceeds placed in an escrow account.
 {¶ 7} In November 2006, Daniel sold the Homer City property and the Lee Daniels corporation without informing or consulting with Karen.
 {¶ 8} On January 11, 2007, a final contested hearing was held on the divorce. At this hearing, most of the outstanding issues regarding custody, support, and *Page 3 
division of the marital estate were resolved by mutual agreement of the parties. With respect to the condominium and bar business assets, the following testimony was heard:
 {¶ 9} "THE COURT: Mr. Helman is going to pay Mrs. Helman the sum of $111,000 [from the sale of the condominium] of non-qualified money * * *.
 {¶ 10} "ATTORNEY [FOR KAREN]: There is $149,000 and change in a title office in Florida. I want to send a letter that everyone signs saying release $111,000 to Karen and the rest to him [Daniel].
 {¶ 11} * * *
 {¶ 12} "ATTORNEY [FOR KAREN]: For the 2006 tax return, the parties will equally split an agreed upon figure for any capital gains or suffer responsibility for any depreciation recapture relative to the sale of the Florida condominium which took place in tax year 2006, the sale of the Homer City, Pennsylvania real estate, another entity, and the adjustment for some office space that there was some deduction.
 {¶ 13} "ATTORNEY [FOR DANIEL]: Those capital gains will be determined by the third party accountant [Ken Smaltz] which was appointed by the Judge * * *. And the parties will split the cost of his fee for determining what those capital gains are.
 {¶ 14} "ATTORNEY [FOR KAREN]: And split capital gains cost.
 {¶ 15} "[GUARDIAN AD LITEM]: And I think that was already said, but they will also divide the capital gains for those three previously mentioned properties.
 {¶ 16} "THE COURT: Equally.
 {¶ 17} "[GUARDIAN AD LITEM]: Equally. And Dan will sign an affidavit that says, that holds Karen harmless for 2005. I am just not sure, Judge, if you can maybe say it a little better. *Page 4 
 {¶ 18} "THE COURT: Regarding any accounting activity affecting the bar and its sale they both agree if there is a tax problem, Mrs. Helman should be considered as an innocent spouse, and any future tax problems would fall solely on Mr. Helman.
 {¶ 19} "MR. HELMAN: Related to business tax.
 {¶ 20} "THE COURT: Related to the business."
 {¶ 21} In a January 30, 2007 Judgment Entry, the court ordered Karen's counsel to prepare a Judgment Entry — Final Decree of Divorce incorporating the stipulations entered into by the parties.
 {¶ 22} Karen's counsel duly prepared a Judgment Entry. Daniel objected to the following paragraph regarding the condominium and business properties:
 {¶ 23} "For tax year 2006, Plaintiff and Defendant, Daniel L. Helman, Jr., will equally pay any capital gain or suffer any responsibility for any depreciation recapture relative to the sale of their Florida condominium which took place in tax year 2006 and the sale of the Homer City, Pennsylvania real estate. Daniel L. Helman, Jr. is responsible for any taxable gain or liability otherwise attributable to Plaintiff due to Daniel L. Helman, Jr.'s sale of the stock of Lee Daniels, Inc., the inventory of Rewst Inn, and any affect that transaction had on the sales price of the Homer City real estate unilaterally sold by Defendant, Daniel L. Helman, Jr. The true amount of the gross sales proceeds of the Homer City real estate, inventory of Rewst Inn, and the sale of stock of Lee Daniels, Inc., shall be disclosed to Plaintiff and Ken Smaltz, CPA, and documentary evidence furnished to support said disclosure. Plaintiff shall not be held liable for recording errors or misrepresentation of data which will cause any tax liability to Plaintiff. Defendant, Daniel L. Helman, Jr. shall be solely responsible for any tax liability as a result of any recording errors or misrepresentation of data surrounding the *Page 5 
sale of the Homer City real estate, inventory of Rewst Inn, and the stock in Lee Daniels, Inc."
 {¶ 24} Daniel maintained this paragraph misrepresented that agreement reached by the parties on January 11, 2007. Specifically, Daniel argued that Karen is responsible for half of the capital gain and/or depreciation recapture tax liability from the sale of Lee Daniels, Inc. as well as from the sale of the commercial property.
 {¶ 25} On July 9, 2007, a status conference hearing was held regarding the Final Decree of Divorce. The court heard arguments from counsel for both parties.
 {¶ 26} On August 9, 2007, the court entered a Supplemental Judgment Entry Findings of Fact and Conclusions of Law, including an order regarding the parties' 2006 tax liabilities as drafted by Karen's counsel.
 {¶ 27} Daniel timely appeals and raises the following assignment of error: "The trial court erred in failing to properly order into effect the parties' prior stipulations as it pertained to the division of the tax consequences from the sale of the parties' assets."
 {¶ 28} It is a common and favored practice in Ohio for parties in domestic relations actions to resolve the issues between them through negotiated settlement. Sundstrom v. Sundstrom, 11th Dist. No. 2005-A-0013, 2006-Ohio-486, at ¶ 22; Booth v. Booth, 11th Dist. No. 2002-P-0099, 2004-Ohio-524, at ¶ 6. "Where the parties reach such an agreement in the presence of the court, the agreement constitutes a binding contract and the trial court may properly sign a judgment entry reflecting the settlement agreement." Booth, 2004-Ohio-524, at ¶ 6, citing Spercel v. Sterling Industries, Inc. (1972), 31 Ohio St.2d 36, paragraph two of the syllabus. Although binding on the parties, a settlement agreement is not binding on the court, which has the discretion to adopt the agreement, reject the agreement, or adopt portions of the agreement while *Page 6 
ruling separately on other issues. Eyre v. Eyre, 11th Dist. No. 2003-P-0133, 2004-Ohio-6685, at ¶ 15 (citation omitted).
 {¶ 29} "[A]n agreed judgment entry is subject to the same rules of construction as a contract, in which common, unambiguous words will be given their ordinary meaning, unless some other meaning is clearly suggested from the face or overall contents of the agreement."Dvorak v. Petronzio, 11th Dist. No. 2007-G-2752, 2007-Ohio-4957, at ¶ 18, citing Phillips v. Phillips, 11th Dist. No. 2006-A-0037,2007-Ohio-3368, at ¶ 34.
 {¶ 30} When a disagreement arises concerning the meaning of an agreement, it is well-established that "a trial court has broad discretion to interpret ambiguous or vague provisions" contained in the settlement agreement. Perko v. Perko, 11th Dist. No. 2004-G-2561,2005-Ohio-3777, at ¶ 19 (citations omitted); Kistler v. Kistler, 11th Dist. No. 2003-T-0060, 2004-Ohio-2309, at ¶ 14 (citations omitted);Yaeger v. Yaeger, 11th Dist. No. 2002-G-2453, 2004-Ohio-1959, at ¶ 27
(citations omitted). "An interpretative decision by the trial court cannot be disturbed upon appeal absent a showing of an abuse of discretion." Pilch v. Pilch, 11th Dist. No. 2005-T-0135, 2006-Ohio-5829, at ¶ 24 (citation omitted).
 {¶ 31} Daniel's first argument is that no ambiguity exists in the stipulations read into the record on July 11, 2007. According to Daniel, the agreement clearly references "three assets which occurred in 2006": the sale of the Florida condominium; the sale of the Pennsylvania commercial property; and the sale of "another entity," understood to be Lee Daniels, Inc. or the bar business. Daniel acknowledges Lee Daniels, Inc. is not expressly referenced by name in the agreement, but maintains the parties understood three assets where at issue, as evidenced by the Guardian ad Litem's remark that "they will also divide the capital gains for those three previously mentioned properties." *Page 7 
 {¶ 32} Alternatively, Daniel argues that, if the settlement agreement did not include Lee Daniels, Inc., that asset becomes a marital liability subject to equal division. Daniel notes that, on the parties' jointly filed tax returns for the years between 2001 and 2005, they jointly received the benefit of a deduction for depreciation on that asset. Accordingly, they should likewise share the tax consequences from the sale of the asset.
 {¶ 33} Karen maintains, on the other hand, that the words "another entity" do not signify a third entity, but are in apposition to "the Homer City, Pennsylvania real estate," i.e. another entity distinct from the "Florida condominium."
 {¶ 34} Karen also distinguishes the character of Lee Daniels, Inc. as an asset from the Florida and Pennsylvania rental properties. The two real property assets were titled in both Daniel and Karen's names. Lee Daniels, Inc., however, was a corporate asset whose stock was wholly owned by Daniel and/or his father. This asset was sold without Karen's knowledge or consent and Karen made no claim to the proceeds of the sale. Accordingly, Daniel should be solely liable for the tax consequences from the sale of the asset.
 {¶ 35} We conclude the parties' agreement is ambiguous regarding the disposition of Lee Daniels, Inc. and the lower court acted within its discretion in resolving this ambiguity. This ambiguity stems from the Rewst Inn comprising two distinct assets, a business corporation and the real property on which the business operated. Thus, it is uncertain whether "another entity" refers to the corporation or the real estate. Likewise, when the court stated that Karen should be absolved of any future tax liability regarding "the bar and its sale," it is uncertain whether the court is referring to the corporation, or the real estate, or both. *Page 8 
 {¶ 36} Moreover, the trial court is in the best position to resolve this ambiguity. As Daniel's counsel pointed out at the status conference hearing, the negotiations for the settlement agreement occurred in the trial judge's chambers and presence. There is no record of these deliberations before us. Accepting the guardian ad litem's statement that three "properties" were at issue, the settlement agreement before only attests, in uncertain terms, the existence of two of these assets.
 {¶ 37} Daniel faults the trial court for not holding an evidentiary hearing to discern the parties' intent in reaching their agreement. We disagree. Daniel had an opportunity to proffer evidence at the status conference hearing at which he argued his interpretation of the agreement before the court. Daniel did not move the court for such a hearing and cites no authority that requires a court hold such a hearing in this situation.
 {¶ 38} The sole assignment of error is without merit.
 {¶ 39} For the foregoing reasons, the judgment of the Trumbull County Court of Common Pleas, Domestic Relations Division, terminating the parties' marriage and dividing the marital estate, is affirmed. Costs to be taxed against appellant.
 COLLEEN MARY OTOOLE, J., MARY JANE TRAPP, J., concur. *Page 1