DECISION AND JUDGMENT
{¶ 1} In this appeal from a judgment of the Lucas County Court of Common Pleas, Domestic Relations Division, appellant, Kathleen M. Schwenker, asserts the following assignments of error:
 {¶ 2} "The trial court abused its discretion in terminating spousal support."
 {¶ 3} "The trial court abused its discretion in denying attorney's fees." *Page 2 
 {¶ 4} Appellant and appellee, Richard L. Schwenker, were married for 26 years and had six[1] children. In December 1998, Richard filed a petition seeking a divorce from Kathleen. At that time, Richard was employed as a pilot by Northwest Airline. His gross earnings were $157,590 per year.
 {¶ 5} In February 1999, the domestic relations court entered a "Decree of Dissolution of Marriage" that incorporated the parties' separation agreement. Pursuant to the decree, Richard was required to pay child support for his three children who were still minors. Kathleen was awarded the marital residence. Richard was also ordered to pay spousal support to Kathleen in the amount of $3,282 per month, with that amount to increase up to a limit of $4,000 when each of the parties' minor children reached the age of majority.
 {¶ 6} In addition, the following Qualified Domestic Relations Orders ("QDRO") were prepared and filed by the parties: (1) a QDRO dividing Richard's 401(K), as of November 1, 1998, between Richard and Kathleen; (2) a QDRO providing that Kathleen receive 100 percent of the pension benefits accumulated under Richard's ESOP Plan and Northwest Airline Corporation Employee Stock Plan until November 1, 1998, and that Richard be responsible for any loans owed in connection with these assets; and (3) a QDRO providing that Kathleen shall receive a pension benefit equal to 50 percent of Richard's interest in any "Defined Benefit Pension Plan" accrued between September 4, *Page 3 
1973 and November 1, 1998. Kathleen was also awarded all right, title, and interest in Richard's Supplemental Investment Fund Account. In addition, Kathleen received all rights, title and interest in the marital residence.
 {¶ 7} Richard remarried shortly after his divorce from Kathleen was final. On December 9, 2005, Richard filed a motion to terminate spousal support. Richard asserted that a substantial change in circumstances occurred because his current wife had "just undergone emergency heart surgery;" therefore, he intended to retire on December 31, 2005, in order to provide full time care for her. Richard acknowledged that this was some eight and one-half months prior to the federally mandated retirement age of 60 for airline pilots. He also admitted that another reason for early retirement was the fact that Northwest Airline was reducing the salary of its pilots.
 {¶ 8} On July 11, 2006, Kathleen filed a motion to show cause, alleging that Richard retired on December 31, 2005, and that as of January 31, 2006, he terminated all spousal support payments. According to Kathleen, Richard was currently in arrears on his spousal support in the amount of $28,000 (through July 31, 2006). She asked the court to find Richard in contempt, to imprison him, and to award her the owed amount, plus attorney's fees and costs.
 {¶ 9} On September 27, 2006, a hearing was held before a magistrate on all of the issues raised by the parties. No evidence was adduced at that hearing on the question of Kathleen's attorney's fees. Nevertheless, each party filed a post hearing brief. Kathleen *Page 4 
included a computer-generated list of the hours expended by her attorney in preparation and advancement of this action and the total, $3,931.25, she owed in attorney's fees.
 {¶ 10} On July 13, 2007, the magistrate entered a decision finding Richard in contempt due to his failure to pay court ordered spousal support after January 6, 2006. Therefore, the magistrate determined that in order for Richard to purge himself of the contempt, he must pay any arrearages due and owing to Kathleen through September 2006 within 60 days of the magistrate's decision. The magistrate found, however, that as of Richard's sixtieth birthday, September 23, 2006, his support obligation terminated. The magistrate concluded that Kathleen failed to offer any evidence of her attorney's fees at the hearing and, consequently, ordered each party to pay his or her own attorney's fees and court costs.
 {¶ 11} Kathleen filed timely objections to the magistrate's decision. She contended that the magistrate should not have terminated her spousal support, but should have modified the amount of support according to the decrease in Richard's income. She also complained that even though Richard was found to be in contempt of court for unilaterally ceasing his spousal support obligation when he voluntarily retired before his sixtieth birthday, the magistrate failed to impose any sanctions for this contempt. Finally, Kathleen asserted that she was entitled to her requested attorney's fees because she offered evidence of the same in her post hearing brief.
 {¶ 12} On October 30, 2007, the trial court entered a judgment that, with a few factual exceptions, adopted the magistrate's decision on the finding of contempt, the *Page 5 
termination of the spousal support award, the payment of the spousal support arrearage, and the denial of Kathleen's request for attorney's fees. The court did, however, find that the magistrate failed to impose any sanction for Richard's contempt and ordered a remand solely for the purpose of the imposition of that sanction.
 {¶ 13} In her first assignment of error, Kathleen claims that the domestic relations court abused its discretion by terminating her spousal support. In particular, she argues that under the terms of the Decree of Dissolution, spousal support could be terminated upon the happening of only three events, these being her death, her remarriage, or Richard's death. We disagree.
 {¶ 14} The following relevant clauses were incorporated into the decree:
 {¶ 15} "3. Said spousal support payments as set forth in paragraphs 1 and 2 above shall terminate upon the Wife's Death, Defendant's death or Wife's remarriage, whichever event occurs first in point of time;and
 {¶ 16} "4. Said spousal support payments as set forth in paragraphs 1and 2 above shall be subject to modification as to both amount andduration; and loss of income by Wife shall not, however, be a basis for increase in [sic] spousal support obligation; (Emphasis added.)
 {¶ 17} "5. The mandatory retirement of the Husband from his present employment shall be a valid change of circumstances to be considered by the Court in a modification proceeding; and * * *." *Page 6 
 {¶ 18} Here, we must ascertain the import of the words used in the separation agreement incorporated into Decree of Dissolution in order to decide whether Kathleen's spousal support could be terminated only upon the occurrence of one of the three events set forth in paragraph three as set forth above. "[A]n agreed judgment entry is subject to the same rules of construction as a contract, in which common, unambiguous words will be given their ordinary meaning, unless some other meaning is clearly suggested from the face or overall contents of the agreement."Dvorak v. Petronzio, 11th Dist. No. 2007-G-2752, 2007-Ohio-4957, ¶ 18, citing Phillips v. Phillips, 11th Dist. No. 2006-A-0037, 2007-Ohio-3368, ¶ 34.
 {¶ 19} Thus, we must construe the relevant words in the grant of spousal support to Kathleen according to their common, ordinary, and unambiguous meaning. The word "and", which connects paragraph three to paragraph four, is "used as a function word to indicate connection or addition especially of items within the same class or type* * *." Merriam Webster's Collegiate Dictionary (10th Ed. 1996) 43. See, also, Black's Law Dictionary (Abridged 6th Ed. 1991) 56, (defining "and" as a conjunction connecting words or phrases expressing the idea that the latter is to be added to or taken along with the first."). "Duration" is defined as "1. continuance in time; 2. the time during which something exists or lasts." Merriam Webster's Collegiate Dictionary (10th Ed. 1996) 360. Consequently, paragraph four of the decree as it relates to spousal support also granted the trial court the authority to determine when that support could be terminated. In other words, the court's ability to terminate Kathleen's spousal support was not limited *Page 7 
to the happening of those events listed in paragraph three. The question is, therefore, whether the trial court abused its discretion in terminating Kathleen's spousal support as of the date of Richard's mandatory retirement.
 {¶ 20} A trial court may modify/terminate spousal support only in those cases where there is a clause in a divorce/dissolution decree or in a separation agreement incorporated into the decree that expressly grants that court the right to modify. R.C. 3105.18(B). If such an agreement does exist, a domestic relations court has broad discretion in modifying spousal support awards, if there has been a change of circumstances that warrants a modification or termination. Mottice v.Mottice (1997), 118 Ohio App.3d 731, 735; Schultz v. Schultz (1996),110 Ohio App.3d 715, 724. Absent an abuse of discretion, the trial court's judgment on this issue will not be overturned on appeal. Derickson v.Derickson, 12th Dist. No. CA2006-03-050, 2007-Ohio-1889, ¶ 11 (Citations omitted.). An abuse of discretion denotes that the trial court committed more than a simple error in judgment; rather, it means that the court's attitude in reaching its decision was unreasonable, arbitrary, or unconscionable. Blakemore v. Blakemore (1983), 5 Ohio St.3d 217, 219.
 {¶ 21} In the present case, Richard's mandatory retirement was a stipulated change of circumstances. As found by the magistrate, the evidence offered at the hearing of this matter demonstrated that, in 2006, Kathleen's yearly income from her employment plus her income from Richard's pension and annuity proceeds awarded her as part of the division of marital property exceeds Richard's income in 2006. Kathleen does not *Page 8 
dispute this figure. Kathleen also testified that she has an IRA in the amount of $203, 979. Thus, while the evidence offered below shows that Kathleen has a $250,000 mortgage on the marital residence, which is valued at $500,000, and monthly expenses of $7,000, we cannot say that the trial court's attitude in terminating Kathleen's spousal support due to the change in Richard's circumstances was arbitrary, unreasonable, or unconscionable. Accordingly, Kathleen's first assignment of error is found not well-taken.
 {¶ 22} In her second assignment of error, Kathleen asserts that the trial court abused its discretion in failing to award her the attorney's fees that she requested in her show cause motion. Although the magistrate did find Richard in contempt, he never imposed a sanction for that contempt. Therefore, the domestic relations court remanded that issue to the magistrate for the imposition of a sanction. As noted by this court, that was an action separate and apart from Richard's motion to terminate spousal support. See Schwenker v. Schwenker (Jan. 18, 2008) 6th Dist. No. L-07-1398, p. 4. Therefore, the contempt action is, in and of itself, a final and appealable judgment only after a sanction is imposed. See Cooper v. Cooper (1984), 14 Ohio App.3d 327, 328-329;Strong v. Strong, 6th Dist. No. L-01-1464, 2002-Ohio-234. As a result, the only issue in this present appeal is the trial court's grant of the motion to terminate spousal support, an action in which Richard prevailed. Accordingly, Kathleen's second assignment of error cannot be addressed in the instant appeal. *Page 9 
 {¶ 23} On consideration whereof, the judgment of the Lucas County Court of Common Pleas, Domestic Relations Division, is affirmed. Kathleen Schwenker is ordered to pay the costs of this appeal pursuant to App. R. 24. Judgment for the clerk's expense incurred in preparation of the record, fees allowed by law, and the fee for filing the appeal is awarded to Lucas County.
JUDGMENT AFFIRMED.
A certified copy of this entry shall constitute the mandate pursuant to App. R. 27. See, also, 6th Dist. Loc. App. R. 4.
[1] This number is taken directly from the trial court's judgment. The total number of children differs in the parties' filings and the magistrate's decision. Nonetheless, it is undisputed that only three minor children resided with Kathleen at the time of the dissolution. *Page 1