OPINION
{¶ 1} Appellant, Alison Elaine Nedel ("Ms. Nedel"), appeals the Portage County Court of Common Pleas, Domestic Relations Division's February 14, 2007 judgment entry overruling her objections to the magistrate's decision requiring her to reimburse appellee Gregory P. Nedel ("Mr. Nedel") for overpayment of child support obligations and for travel expenses and attorney fees incurred by Mr. Nedel for traveling to a *Page 2 
hearing, which was continued due to the failure of Ms. Nedel's counsel to appear. For the reasons that follow, we affirm.
 {¶ 2} Statement of Facts and Procedural History
 {¶ 3} Mr. Nedel and Ms. Nedel were divorced in 1989 and had two minor children together. Mr. Nedel was required to pay Ms. Nedel child support in the amount of $204.42/per month per child. On November 30, 2004, the Portage County Department of Job and Family Services, Child Support Enforcement Division ("PCDJFS") notified the parties that Mr. Nedel had made an overpayment in child support in the amount of $6,470.38.
 {¶ 4} On June 6, 2005, Mr. Nedel filed a motion with the court asking for an order requiring Ms. Nedel to repay him for the arrearage amount. Mr. Nedel introduced as evidence the PCDJFS calculation showing the credit balance of $6,470.38.
 {¶ 5} On December 1, 2005, a hearing was held before a magistrate concerning the overpayment of child support. The parties reached an agreement and entered into a stipulated judgment entry, which was filed on January 4, 2006. The parties agreed and stipulated that Mr. Nedel would be granted a judgment in the amount of $5,400 and that Ms. Nedel would pay Mr. Nedel "$50.00 per month by direct payment * * * on the 1st day of each month until paid in full with the first payment due on January 1, 2006." The parties further stipulated that Mr. Nedel was entitled to commence collection proceedings against Ms. Nedel for failure to make a timely monthly payment and that Mr. Nedel was to provide Ms. Nedel with his address for mailing such payments.
 {¶ 6} On May 15, 2006, Mr. Nedel filed a motion asking the court to hold Ms. Nedel in contempt for failing to make the April 2006 payment and for abusing the *Page 3 
process by making her payment in the form of pennies and credit card vouchers. Mr. Nedel asked the court to garnish Ms. Nedel's wages and asked for attorney fees, costs, and other relief that the court deems just and equitable.
 {¶ 7} The court set a hearing for June 7, 2006. On May 18, 2006, Ms. Nedel filed a motion for a continuance. The hearing was continued to June 26, 2006. On June 22, 2006, Ms. Nedel's counsel filed another motion for a continuance on the ground that he had a previously scheduled criminal hearing set for that same day. The court denied this request since it had already granted Ms. Nedel one continuance.
 {¶ 8} On June 26, 2006, both parties and Mr. Nedel's counsel were present for the scheduled hearing but Ms. Nedel's counsel did not appear. Ms. Nedel asked for a continuance, which the trial court granted. The hearing was subsequently rescheduled for July 28, 2006.
 {¶ 9} On July 27, 2006, Mr. Nedel filed an affidavit in which he averred that he incurred the following attorney fees and expenses in traveling from his residence in Hartford, Connecticut to Akron, Ohio for the June 26, 2006 hearing: (1) $113.13 in gasoline expenses; (2) lost wages in the amount of $317.98; (3) $400 in attorney fees.
 {¶ 10} A hearing was held on July 28, 2006. Ms. Nedel's counsel was reluctant to allow Ms. Nedel to testify, and objected on Fifth Amendment grounds. However, the trial court instructed Ms. Nedel to testify. Ms. Nedel admitted that she made payments to Mr. Nedel in the form of coins and gift cards and that she paid him after the first of each month. However, she refused to concede that the stipulated judgment entry required her to pay Mr. Nedel $50 per month "on the first day of each month." In her *Page 4 
opinion, the timing of the payment was irrelevant. As long as she made the payment during the month, she believed she was in compliance with the court's order.
 {¶ 11} Mr. Nedel testified that Ms. Nedel failed to make the $50 payments to him on the first of each month. Rather, he said that he was paid as follows, and attached as an exhibit a ledger reflecting these payments: (1) January 2006 payment: (a) 12/15/2005-$25 (box of pennies); (b) 1/25/06-$25 Key Bank gift card and four quarters; (2) February 2006 payment: (a) 2/15/06-$12.50 (100 dimes, 2 quarters, 2 one dollar bills); (b) 2/27/06-$12.50 (125 dimes); (3) March payment: (a) 3/1/06-$12.50 (125 dimes); (b) 3/25/06-$50 ($40 postal money order; $10 third party check); (4) April payment: no payment; (5) May payment: (a) 5/22/06-$25 personal money order; (b) 5/26/06-$25 postal money order; (6) June payment: (a) 6/3/06-$25 Traveler's Express moneygram; (b) 6/5/06-$25 Marc's Travelers Express money order; (c) 6/8/06-$25 Traveler's Express moneygram; (d) 6/19/06-$25 Western Union money order; $25 postal money order; (7) July payment: (a) 7/5/06-$25 Western Union money order; (b) 7/15/06-$25 postal money order. Mr. Nedel conceded that even though the payments were not made by the first of each month, Ms. Nedel was current with her payments at the time of the hearing.
 {¶ 12} Mr. Nedel also testified per his July 27, 2006 affidavit with respect to the expenses he incurred while traveling to the June 26, 2006 hearing, which the court continued due to the failure of Ms. Nedel's counsel to appear.
 {¶ 13} On September 1, 2006, the magistrate issued his decision. The magistrate found that under the terms of the January 4, 2006 stipulated judgment entry, payment by Ms. Nedel was to be made on or before the first day of each month, *Page 5 
commencing January 1, 2006, and the total amount agreed to be repaid was $5,400. The magistrate accepted Mr. Nedel's ledger of payments received as evidence. The magistrate further found that none of the payments were timely made. Furthermore, as of the filing of the contempt motion, Ms. Nedel was in arrears for $12.50 for February, 2006 and $50 for April and May 2006. After the filing of the contempt motion, Ms. Nedel had caught up in her prior arrearages, except for $12.50 for February, 2006 and $25 for August, 2006.
 {¶ 14} The magistrate further found that it had jurisdiction over the matter; that because Ms. Nedel earns more than $60,000 in annual salary, a $50 monthly payment should not be an economic hardship; that Mr. Nedel was entitled to the expenses totaling $831.11 he incurred while attending the canceled hearing; and that Ms. Nedel not be found in willful contempt of the January 4, 2006 judgment entry. In addition, the magistrate recommended that subsequent monthly payments be made by wage assignment.
 {¶ 15} Ms. Nedel filed objections to the magistrate's decision, arguing, inter alia, that the court has no jurisdiction over Mr. Nedel's claims for reimbursement of overpayments of child support or for travel expenses; that the magistrate erred in requiring her to testify; and that the magistrate erred in finding that she was in violation of the court's January 4, 2006 order.
 {¶ 16} The trial court held a hearing on Ms. Nedel's objections on February 9, 2007. In its February 14, 2007 judgment entry, the trial court adopted the magistrate's decision except for his recommendation that Ms. Nedel's wages be garnished.
 {¶ 17} Ms. Nedel filed the instant appeal, raising eight assignments of error: *Page 6 
 {¶ 18} "(1) The court erred when it determined it had subject matter jurisdiction over the defendant's claims;
 {¶ 19} "(2) The court erred when it determined defendant established that plaintiff was in violation of the court's order of January 4, 2006;
 {¶ 20} "(3) The court erred when it determined defendant had not waived and/or defendant was not estopped from asserting plaintiff's breach;
 {¶ 21} "(4) The court erred when it determined the debt, in this instance, is one for which the court may threaten or actually imprison plaintiff;
 {¶ 22} "(5) The court erred when it determined defendant had demonstrated the irreparable injury and lack of an adequate remedy at law necessary to exercise equitable jurisdiction;
 {¶ 23} "(6) The court erred when it sustained the magistrate [sic] erroneous introduction of plaintiff's testimony over her attorney's objection based on Fifth Amendment grounds and the court should have stricken her testimony from the record;
 {¶ 24} "(7) The court erred when it determined it had the jurisdiction to award defendant's [sic] more than $250;
 {¶ 25} "(8) The court erred when it determined it could assess defendant's travel expenses and attorney fees as costs."
 {¶ 26} Standard of Review
 {¶ 27} "When reviewing an appeal from a trial court's decision to accept or reject a magistrate's decision, an appellate court must determine whether the trial court abused its discretion." Phillips v.Phillips, 11th Dist. No. 2006-A-0037, 2007-Ohio-3368, at ¶ 32, citingHayes v. Hayes, 11th Dist. No. 2005-L-138, 2006-Ohio-6538, at ¶ 10. An *Page 7 
abuse of discretion connotes more than an error of law or judgment; it implies that the court's attitude was unreasonable, arbitrary or unconscionable. Blakemore v. Blakemore (1983), 5 Ohio St.3d 217, 219. Moreover, "`[i]f there is some competent, credible evidence to support the trial court's decision, there is no abuse of discretion,' and furthermore, the trial court's decision will not be found to be against the manifest weight of the evidence." Phillips at ¶ 32, citingMiddendorf v. Middendorf, 82 Ohio St.3d 397, 401, citing Ross v.Ross (1980), 64 Ohio St. 2d 203, 204-205.
 {¶ 28} Jurisdiction of Court
 {¶ 29} In her first assignment of error, Ms. Nedel contends that the trial court lacked subject matter jurisdiction over Mr. Nedel's claims. She alleges that the claims being asserted in this case are not domestic relations matters and do not arise from a child support order, but instead involve claims by Mr. Nedel for negligence against the PCDJFS and a claim against her for unjust enrichment. Thus, Ms. Nedel maintains that the trial court had no jurisdiction over this case since claims other than domestic relations matters must be brought in a separate action outside the domestic relations court. For support, Ms. Nedel cites, inter alia, Tanagho v. Tanagho (Feb. 23, 1993), 10th Dist. No. 92AP-1190, 1993 Ohio App. LEXIS 1201 and Lisboa v. Karner (2006),167 Ohio App.3d 359, 2006-Ohio-3024.
 {¶ 30} We reject Ms. Nedel's argument in its entirety. Ms. Nedel mischaracterizes the nature of this proceeding. Mr. Nedel has never asserted a claim against the PCDJFS for negligence nor has he raised a claim against Ms. Nedel for unjust enrichment. Mr. Nedel's claims are for reimbursement of overpaid child support *Page 8 
he paid to Ms. Nedel, which squarely fall within the jurisdiction of the domestic relations court.
 {¶ 31} R.C. 3105.011 sets forth the jurisdiction of domestic relations courts. It states:
 {¶ 32} "The court of common pleas, including divisions of courts of domestic relations, has full equitable powers and jurisdiction appropriate to the determination of all domestic relations matters. This section is not a determination by the general assembly that such equitable powers and jurisdiction do not exist with respect to any such matter."
 {¶ 33} R.C. 3105.011 affords a domestic relations court with broad jurisdiction to determine "all domestic relations matters," which includes the overpayment of child support. In this regard, Ms. Nedel's reliance on the Tanagho and Lisboa decisions are misplaced since in both of those decisions the party sought to have a collateral matter involving a third-party decided by a domestic relations court. This case, however, is distinguishable since the rights of third parties are not involved in this proceeding. Rather, the instant case is limited to the issue of child support, which falls within the scope of the domestic relation court's jurisdiction.
 {¶ 34} Specifically, in Tanagho, the domestic relations court decided a quiet title action brought against a third-party defendant within the context of a divorce action. On appeal, the Tenth District held that the domestic relations court had exceeded its jurisdiction in deciding the quiet title action. The court reasoned that "in an action for divorce, the common pleas court, or its domestic relations division, is limited in its jurisdiction to the determination of domestic relations matters and any collateral claims *Page 9 
must be brought in a separate action in the appropriate court or division thereof, where the claim involves determination of the rights of a third-party." Id. at 6.
 {¶ 35} In Lisboa, the relator filed a writ of prohibition to prohibit the domestic relations judge from ruling on a contract fee dispute among third-party creditors, the marital estate and the relator in her underlying divorce action. The Eighth District granted the writ of prohibition and held that "R.C. 3105.011 * * * has been consistently interpreted as excluding collateral claims and non-domestic relations matters from the domestic relations court." Id. at ¶ 13.
 {¶ 36} Because the overpayment of child support is a domestic relations matter, we find that the domestic relations court had jurisdiction to decide the matter.
 {¶ 37} Ms. Nedel's first assignment of error is overruled.
 {¶ 38} Noncompliance with Court's Order
 {¶ 39} In her second assignment of error, Ms. Nedel contends that the trial court erred when it determined that she was in violation of the court's January 4, 2006 agreed order. She also contends in her fourth and seventh assignments of error that the trial court erred when it determined that it had jurisdiction to imprison Ms. Nedel and to fine her more than $250 for contempt. Ms. Nedel further maintains that her obligation to repay her ex-husband was a debt and that the Ohio constitution bars imprisonment or the threat of imprisonment for the nonpayment of a debt.
 {¶ 40} Again, Ms. Nedel's arguments miss the mark. To begin with, the trial court never found Ms. Nedel to be in contempt. In fact, although the trial court recognized that it did have the power to hold Ms. Nedel in contempt for her noncompliance with its order, the court opted not to do so. The court expressly stated: *Page 10 
 {¶ 41} "Specifically, the court herein determines that [the] parties specifically agreed that Plaintiff had an obligation to pay the amount owed to Defendant in monthly installments of $50.00 each. That is a specific order agreed by the parties. The facts of the case demonstrate that Plaintiff failed to do so. She therefore violated this Court's order and, in so doing, subjected herself to the contempt powers of this Court. * * * The Court, however, concludes that the Magistrate did not find Plaintiff to be in contempt * * *. [T]he Court accepts the Magistrate's recommendation and does not find Plaintiff in contempt * * *."
 {¶ 42} Because the trial court chose not to hold Ms. Nedel in contempt, any argument concerning the court's contempt power or penalties arising from a finding of contempt are moot where there has been no finding of contempt. See Wolfe v. Sagle (Sept. 22, 2000), 5th Dist. No. CT99-0021, 2000 Ohio App. LEXIS 4546, at 8.
 {¶ 43} Ms. Nedel also argues that she did in fact comply with the court's January 4, 2006 order since she mailed $50.00 to Mr. Nedel before the end of each month. The January 4, 2006 order, which the parties agreed and stipulated to, specifically states that Ms. Nedel "shall pay $50.00 per month by direct payment * * * on the 1st day of eachmonth until paid in full with the first payment due on January 1, 2006." (Emphasis added.)
 {¶ 44} The wording of the order cannot be any clearer. The $50 monthly payment was due by the first day of each month. However, the evidence revealed that Ms. Nedel failed to comply with this order because she admittedly did not tender the $50 monthly payments by the first of each month. In addition, contrary to her position that she made a complete payment to Mr. Nedel by the end of each month, the *Page 11 
evidence establishes that Ms. Nedel only made a partial payment in February and failed to make an April payment.
 {¶ 45} The fact that Ms. Nedel believed she had a thirty day grace period is of no avail since the express wording of the order contains no such language regarding a grace period. The thirty day time period found at paragraph three of the agreed entry relates only to the"commencement of collection proceedings" against Ms. Nedel for any failure to make a "timely monthly payment." (Emphasis added.) Thus, paragraph three provided that Mr. Nedel had to wait thirty days before filing a motion. Paragraph two provided that Ms. Nedel's payments were due on the "1st day of each month." Paragraph three did not modify paragraph two in any manner. Therefore, because the $50 monthly payments were not made by the first of each month, the trial court was warranted in finding that Ms. Nedel had violated the order and the stipulated agreement.
 {¶ 46} Ms. Nedel further argues in her third assignment of error, that by accepting and cashing the payments after the first of the month, Mr. Nedel has waived or should be estopped from asserting that the order requires payment by the first of the month. This argument lacks merit.
 {¶ 47} Waiver by estoppel "`exists when the acts and conduct of a party are inconsistent with an intent to claim a right, and have been such as to mislead the other party to his prejudice and thereby estop the party having the right from insisting upon it.'" National City Bankv. Rini, 162 Ohio App.3d 662, 2005-Ohio-4041, at ¶ 24, citingMark-It Place Foods, Inc. v. New Plan Excel Realty Trust, Inc.,156 Ohio App.3d 65, 2004-Ohio-411, at ¶ 57. "Waiver by estoppel allows a party's inconsistent conduct, rather than a party's intent, to establish a waiver of rights." Id. Thus, in order to *Page 12 
establish waiver by estoppel as a meritorious defense, Ms. Nedel was required to show that Mr. Nedel's conduct was inconsistent with an intent to enforce his rights. Id. at ¶ 26.
 {¶ 48} The fact that Mr. Nedel accepted payments after the first of each month does not mean that his conduct was inconsistent with an intent to enforce his rights. The January 4, 2006 stipulated agreement afforded Mr. Nedel the right to "commence collection proceedings against the wife 30 days after the wife fails to make a timely monthly payment." Mr. Nedel exercised this right by filing his contempt motion on May 15, 2006, after Ms. Nedel failed to make an April monthly payment. Under the circumstances presented, we are unwilling to find that Mr. Nedel's acceptance of monies owed to him evidences acquiescence in the tendering of late payments. Ms. Nedel has failed to satisfy her burden of proving the defense of equitable estoppel.
 {¶ 49} We overrule Ms. Nedel's second, third, fourth and seventh assignments of error.
 {¶ 50} Wage Attachment
 {¶ 51} Ms. Nedel argues in her fifth assignment of error that the trial court lacked equitable jurisdiction to order a wage attachment. In particular, Ms. Nedel argues that because Mr. Nedel could institute garnishment proceedings against her, he had an adequate remedy at law.
 {¶ 52} This argument is moot since the trial court sustained Ms. Nedel's objection regarding the wage attachment and found that since "the Stipulated Judgment Entry of January 4, 2006, is not a court support order either for child support or spousal support, the enforcement of the payment stated in the Stipulated Judgment Entry cannot be accomplished by a wage attachment process." *Page 13 
 {¶ 53} Ms. Nedel's fifth assignment of error is overruled.
 {¶ 54} Fifth Amendment Right Against Self-Incrimination
 {¶ 55} At the contempt hearing, Ms. Nedel invoked the Fifth Amendment right against self-incrimination, but the trial court compelled her to testify. In her sixth assignment of error, Ms. Nedel contends that her Fifth Amendment rights were violated and that her testimony should be stricken.
 {¶ 56} We disagree. The Fifth Amendment provides that "no person shall be compelled in any criminal case to be a witness against himself * * *." The Fifth Amendment protection "applies to any type of proceeding, whether civil, criminal, administrative, investigatory, or adjudicatory, in which an individual could be compelled to produce evidence against himself which could be used later in a criminal trial." In reKnight (1999), 135 Ohio App.3d 172, 174-175; see, also, In reHenry, 11th Dist. No. 2001-L-115, 2002-Ohio-4513, at ¶ 27. Thus, "[t]he privilege not only applies to evidence that may directly support a criminal conviction, but to information that would furnish a link in the chain of evidence that could lead to prosecution and to evidence that a person reasonably believes could be used against him or her in a criminal prosecution." Id. at ¶ 28, citing Cincinnati v.Bawtenheimer (1992), 63 Ohio St.3d 260, 264.
 {¶ 57} In this case, Ms. Nedel was ordered to appear for a contempt hearing for her failure to abide by the terms of the parties stipulated agreement. The contempt action is civil in nature since it involved a violation "which is on the surface an offense against the party for whose benefit the order was made." In re Gruber, 11th Dist. No. 2007-T-0001, 2007-Ohio-3188, at ¶ 12. Because Ms. Nedel's testimony would not later *Page 14 
be used in a criminal prosecution, her Fifth Amendment rights were not implicated. The trial court did not abuse its discretion in requiring Ms. Nedel to testify.
 {¶ 58} Ms. Nedel's sixth assignment of error is overruled.
 {¶ 59} Travel Expenses and Attorney Fees
 {¶ 60} In her eighth assignment of error, Ms. Nedel contends that the trial court erred when it ordered her to pay Mr. Nedel's attorney fees and travel expenses associated with the June 26, 2006 hearing at which her attorney was not present. Because of counsel's failure to appear, Mr. Nedel, who travelled from Connecticut to Akron, incurred $831.11 in expenses and attorney fees.
 {¶ 61} R.C. 3105.73(B) affords a domestic relations court with the power to award attorney fees and litigation expenses in post-decree matters where it deems equitable. Specifically, R.C. 3105.73(B) states:
 {¶ 62} "In any post-decree motion or proceeding that arises out of an action for divorce, dissolution, legal separation, or annulment of marriage or an appeal of that motion or proceeding, the court may award all or part of reasonable attorney's fees and litigation expenses to either party if the court finds the award equitable. In determining whether an award is equitable, the court may consider the parties' income, the conduct of the parties, and any other relevant factors the court deems appropriate, but it may not consider the parties' assets."
 {¶ 63} "A trial court has broad discretion in the award of attorney fees." Welty v. Welty, 11th Dist. Nos. 2007-A-0013, 2007-A-0015,2007-Ohio-5217, at ¶ 37, citing Bates v. Bates (Dec. 7, 2001), 11th Dist. No. 2000-A-0058, 2001-Ohio-8743, at 13, citing Birath v.Birath (1988), 53 Ohio App.3d 31, 39. "A court's decision on a request for *Page 15 
attorney fees will not be reversed absent an attitude that is unreasonable, arbitrary, or unconscionable." Id., citing Dunbar v.Dunbar (1994), 68 Ohio St.3d 369, 371.
 {¶ 64} In Welty, we recently upheld the trial court's post-decree award of attorney fees under R.C. 3105.73(B) where we found that counsel was required to defend against a groundless motion to show cause. Similarly, in this case, we do not find the court's award of $831.11 in travel expenses and attorney fees to be an abuse of discretion. The trial court expressly overruled Ms. Nedel's counsel's request for a continuance of the June 26, 2006 hearing. In reliance upon this ruling, Mr. Nedel exerted time and energy to attend the hearing, and incurred attorney fees, only to find that Ms. Nedel's counsel had failed to appear. The hearing was continued, which meant that Mr. Nedel was required to make another trip into Akron. Under these circumstances, we find that the trial court acted within its discretion under R.C.3105.73(B) in awarding Mr. Nedel the travel expenses and attorney fees he incurred.
 {¶ 65} Ms. Nedel's eighth assignment of error is overruled.
 {¶ 66} The judgment of the Portage County Court of Common Pleas, Domestic Relations Division, is affirmed.
 DIANE V. GRENDELL, P.J., CYNTHIA WESTCOTT RICE, J., concur. *Page 1