[Cite as *Slocum Maintenance, Inc. v. 400 Washington 44024, L.L.C.*, 2026-Ohio-2249.]

# IN THE COURT OF APPEALS OF OHIO
## ELEVENTH APPELLATE DISTRICT
## GEAUGA COUNTY

| | |
|---|---|
| SLOCUM MAINTENANCE INCORPORATED, | CASE NO. 2025-G-0042 |
| Plaintiff-Appellee, | Civil Appeal from the Court of Common Pleas |
| - vs - | |
| 400 WASHINGTON 44024, L.L.C., et al., | Trial Court No. 2023 M 000484 |
| Defendants-Appellants. | |

## OPINION AND JUDGMENT ENTRY

Decided: June 15, 2026
Judgment: Reversed and remanded

*Robert N. Farinacci,* 65 North Lake Street, Madison, OH 44057 (For Plaintiff-Appellee).

*James E. Grendell*, Plunkett Cooney, 716 Mount Airyshire, Suite 150, Columbus, OH 43235 (For Defendants-Appellants).

JOHN J. EKLUND, J.

{¶1}     Appellants, 400 Washington 44024, L.L.C. and Greg Vilk ("Vilk"), appeal the jury verdict in the Geauga County Court of Common Pleas finding them liable for breach of contract and awarding damages of $65,000.00 to Appellee, Slocum Maintenance Incorporated ("SMI").

{¶2}     Appellants raise two assignments of error, arguing: (1) the trial court erred by failing to grant Appellants' motion for a directed verdict; and (2) the jury's verdict was against the manifest weight of the evidence as to both liability and the judgment amount.

{¶3} Having reviewed the record and the applicable caselaw, we find Appellants' first assignment of error to be without merit. There was sufficient, concrete evidence presented for the jury to determine both liability and damages. However, we find that Appellants' second assignment of error has merit because the amount of damages the jury awarded was against the manifest weight of the evidence.

{¶4} Therefore, we reverse the judgment of the Geauga County Court of Common Pleas and remand the matter for a new trial as to damages.

## Substantive and Procedural History

{¶5} On July 1, 2022, Appellants and SMI entered into a contract. Appellee, owned and operated by Derin Slocum ("Slocum"), agreed to furnish materials and improvements for a renovation of Appellants' property located at 400 Washington Street, Chardon, Ohio. Appellants agreed to pay $385,496.00 for the project, which was to proceed in three phases.

{¶6} On August 16, 2023, Appellee filed a Complaint in the Geauga County Court of Common Pleas for breach of contract seeking damages of $80,500.00.

{¶7} On September 26, 2023, Appellants filed their Answer and Counterclaims against Appellee, asserting breach of contract, unjust enrichment, slander of title, and tortious interference with business relationship/contract.

{¶8} On October 21, 2025, the case was tried to a jury where the following facts and evidence were adduced:

**Slocum's testimony:**

{¶9} Slocum owns SMI, which operated as a reconstruction and remodeling business. Appellee entered into a contract with Appellants to renovate the property at 400

Washington Street. The contract involved Appellee's renovating the roof, removing garage and bay doors, and installing wood framing to enclose the outside of the building. The project commenced in three phases. Phase 1 was projected to take three months, Phase 2 was projected to take one and a half months, and Phase 3 was projected to take two weeks. Performance began in August 2022.

{¶10} Appellants paid SMI $160,496.00 when they completed Phase 1, which involved the installation and framing for security doors and roll up doors. Phase 2 involved the removal of all siding and roofing and installation of a radiant vapor barrier, metal trims, and new roof panels. According to Slocum, SMI completed all Phase 2 requirements except for the end-of-phase punch list, which was meant to identify any outstanding issues or flaws in the project. Vilk complained of a dent in one of the bay doors, but Slocum denied that the dent was present when the door was installed. However, SMI received $110,500.00 for the completion of Phase 2 as outlined in the contract.

{¶11} Slocum addressed the cause of several delays in the project. There was a one-month delay in installing the new siding because the City of Chardon requires new colors to be approved. Other delays occurred. The demolition process took longer than anticipated due to difficulties in removing concrete platforms around the bay doors. Slocum said the original cost estimate for that work was $20,000.00. However, the difficulties increased the expense by $10,000.00, which Vilk declined to pay.

{¶12} Another delay occurred when, according to Slocum, Vilk requested that Slocum do emergency work on a condominium complex. Slocum said that Vilk was on the board of the complex and his girlfriend was the president of the HOA. There had been a fire at the site, and it needed emergency rehabilitation due to fire and smoke damage.

He said that Vilk wanted him to prioritize that job and it halted work at the 400 Washington Street site for approximately two months.

{¶13} Slocum testified that there was certain interior framing work that Vilk wanted to be done. Slocum believed it was not part of the contract. Slocum raised that, and the additional cost of this work with Vilk. Vilk's position was that the framing had been addressed in the contract implicitly because the contract discussed insulation and electrical work that would necessarily be part of the interior framing job.

{¶14} Vilk sent Slocum a text message on April 14, 2023, stating that the electrical work needed to be finished by April 21, 2023, and that the insulation would need to proceed immediately after that. Vilk told Slocum not to hesitate to say if this could not be completed. Slocum responded, "Yes, . . . I got it."

{¶15} Slocum completed electrical work to support the interior framing and sent a bill for $30,000.00. Vilk paid only $12,000.00 on that bill. Similarly, Slocum billed $16,000.00 for framing work but was not paid for that work at all. Finally, Slocum had scheduled and paid a subcontractor for anticipated insulation work to be done during Phase 3. When Vilk cancelled the contractor, Slocum paid a subcontractor $5,000.00 for the subcontractor to abandon the insulation job because the insulation had already been ordered by the time Vilk cancelled the project.

{¶16} When Slocum found out that Vilk was selling the building, he sent a final bill to Vilk on May 23, 2023. The bill stated that Vilk owed:

$14,500.00 for framing to allow for insulation and electrical work
$18,000.00 for unpaid electrical work
$50,000.00 for cancellation of Phase 3 of the project.

Case No. 2025-G-0042

For a total of: $80,500.00.[1]

{¶17} Also on May 23, 2023, Slocum placed a mechanic's lien for $80,500.00 on the property for the outstanding contract balance. Slocum said that he was not paid anything for Phase 3 of the project. He said Phase 3 was to include insulation and labor and was estimated to cost $50,000.00. The contract provided that Appellee would sell the scrap metal from the project and credit the price to Appellants. Slocum testified that he had not sold the scrap and that Vilk was free to sell the scrap metal from the project on his own.

{¶18} On cross-examination, Slocum said that he did not have any documentation, such as invoices, W2s, 1099s, or bills of lading, to support the damages outlined in his testimony or demand letter.

{¶19} He said that his profit margin on Phase 1 was "maybe" $10,000.00 after paying for all material and labor. He could not recall his profit margin on Phase 2. He acknowledged that he had not done any work on Phase 3. He said that he was seeking the entire $50,000.00 provided for in the contract for Phase 3 because Vilk "was in breach of contract for that." When pressed on what the profits from Phase 3 would have been, Slocum said that he underbid the project. He never provided a response to what his losses were for not performing Phase 3. He did not explain why he was entitled to receive the full $50,000.00 for work that had not been performed, nor did he state what his expected material or labor costs would have been for Phase 3.

{¶20} At the close of Appellee's case, Appellants moved for a directed verdict. Appellants argued that the profits from the breach were speculative and that the damages

---

1. The actual total of these figures is $82,500.00.

Case No. 2025-G-0042

calculation relied on "multiple sources, multiple documents . . . but the numbers don't add up." Appellee responded that the numbers that Slocum provided added up to $87,500.00, $5,000.00 for the cancellation of the insulation contractor, $14,500.00 for the framing work, $18,000.00 for the electrical, and $50,000.00 for the cancellation of Phase 3.

{¶21} Appellee argued that between the testimony, text messages, and documentary evidence, there was enough evidence for the jury to decide whether there was a breach of contract and what amount to award for damages. The trial court agreed with Appellee saying that "while the documents may not be perfect, I think Mr. Slocum's testimony can be taken by the Jury for what it's worth. If they decide that he is a credible witness and they give weight to his testimony, so be it. If they decide not, so be it." Therefore, the trial court denied the motion for directed verdict. Appellants reiterated that Slocum had not testified to his expectation damages for the $50,000.00 portion of Phase 3, saying that sum "includes materials, it includes work. There's ample testimony that there's just no way to get certain damages out of what was presented today."

**Vilk's testimony:**

{¶22} Vilk testified that he had previously been a board member for the condominiums but was not on the board when he asked Slocum about doing the job. He denied owning any units or having any financial stake in the condominiums. He said he reached out to Slocum because he knew that he did roofing work. He did not believe the other project would cause delays in the 400 Washington Street project and denied that Slocum ever told him as much. He also testified that Slocum never told him there were going to be delays in the project other than the delay caused by the city's color change permitting requirements.

Case No. 2025-G-0042

{¶23} Vilk said that when he sold the building, no insulation work had been done. He also said that the electrical only worked for half of the building. He said that he had paid $12,000.00 toward the electrical and did not believe he owed the remaining $18,000.00 because it was never completed.

{¶24} He said that the interior framing was always intended to be part of the contract and that doing interior electrical and insulation necessarily requires the framing work to be done. Vilk said that the interior framing work started as soon as the project commenced and was not something that was added later. He also said that Slocum never sent him an itemized invoice for the cost of the framing until the day Slocum sent his final demand letter and placed a mechanic's lien on the property.

{¶25} The trial court gave the following jury instruction in reference to calculating damages:

> If you find by a preponderance of the evidence that [Appellants] breached the contract, [Appellee] is entitled to damages in an amount sufficient to place it in the same position in which it would have been if the contract had been fully performed.
>
> In order to award damages for lost profits, you must find that profits were within the contemplation of the parties at the time the contract was made, and that the loss of profits was the probable result of the breach of the contract.
>
> Lost profits are calculated by deciding what [Appellee] was entitled to receive had the contract between [Appellee] and [Appellants] been performed. You may then add other damages, if any, suffered by [Appellee] as a result of the [Appellants'] breach. From this sum, you should subtract any amount, if any, that the [Appellee] has saved by not having to fully perform the contract.

{¶26} The jury found Appellants liable for $65,000.00 on Appellee's breach of contract claim. The jury found Appellee not liable as to each of Appellants' counterclaims.

{¶27} Appellants timely filed the instant appeal raising two assignments of error.

## Assignments of Error and Analysis

{¶28} We address Appellants' assignments of error together.

Case No. 2025-G-0042

{¶29} Appellants' first assignment of error states: "THE TRIAL COURT ERRED BY FAILING TO GRANT APPELLANTS MOTION FOR A DIRECTIVE VERDICT." [sic]

{¶30} Appellants' second assignment of error states: "THE JURY'S VERDICT FOR [APPELLEE] IS AGAINST THE MANIFEST WEIGHT OF THE UNDISPUTED EVIDENCE BOTH AS TO LIABILITY AND AMOUNT."

{¶31} Appellants' assignments of error do not reference their Counterclaims and only challenge Appellee's claim for breach of contract as to liability and as to damages.

**Directed verdict:**

{¶32} Civ.R. 50(A)(4) provides:

When a motion for a directed verdict has been properly made, and the trial court, after construing the evidence most strongly in favor of the party against whom the motion is directed, finds that upon any determinative issue reasonable minds could come to but one conclusion upon the evidence submitted and that conclusion is adverse to such party, the court shall sustain the motion and direct a verdict for the moving party as to that issue.

{¶33} Civ.R. 50(A) "requires the trial court to give the nonmoving party the benefit of all reasonable inferences that may be drawn from the evidence." *Huffman v. Kazak Bros., Inc.*, 2002-Ohio-1683, ¶ 18 (11th Dist.). "When there is sufficient credible evidence to permit reasonable minds to reach different conclusions on an essential issue, the trial court must submit that issue to the jury." *Id.* A motion for directed verdict presents a question of law that tests the legal sufficiency of the evidence rather than the weight of the evidence. *Id.* at ¶ 19. Thus, an appellate court reviews the trial court's ruling on a motion for directed verdict de novo. *Id.*

**Manifest weight of the evidence:**

{¶34} "The civil manifest weight of the evidence standard is: '[j]udgments supported by some competent, credible evidence going to all the essential elements of the case will not be reversed by a reviewing court as being against the manifest weight of the evidence.'" *DeCola v. Pete Wing Contracting, Inc.*, 2010-Ohio-2283, ¶ 95 (11th Dist.), quoting *C. E. Morris Co. v. Foley Constr. Co.*, 54 Ohio St.2d 279 (1978), syllabus.

{¶35} "[W]e review the trial court's factual findings under the manifest weight standard of review, while the trial court's legal findings are reviewed de novo." *Ultimate Salon & Spa, Inc. v. Legends Constr. Group*, 2019-Ohio-2506, ¶ 30 (11th Dist.). "Weight of the evidence concerns 'the inclination of the greater amount of credible evidence, offered in a trial, to support one side of the issue rather than the other. . . . Weight is not a question of mathematics, but depends on its effect in inducing belief.'" (Emphasis deleted.) *State v. Thompkins*, 1997-Ohio-52, ¶ 24, quoting *Black's Law Dictionary* (6th Ed. 1990). "'The [appellate] court, reviewing the entire record, weighs the evidence and all reasonable inferences, considers the credibility of witnesses and determines whether in resolving conflicts in the evidence, the [trier of fact] clearly lost its way and created such a manifest miscarriage of justice that the [judgment] must be reversed and a new trial ordered.'" *Id.*, quoting *State v. Martin*, 20 Ohio App.3d 172, 175 (1st Dist.1983).

{¶36} "Judgments supported by some competent, credible evidence going to all the essential elements of the case will not be reversed by a reviewing court as being against the manifest weight of the evidence." *C. E. Morris Co.* at syllabus. "[A] court of appeals [must] be guided by a presumption that the findings of the trier-of-fact were indeed correct. . . . The underlying rationale of giving deference to the findings of the [jury]

Case No. 2025-G-0042

rests with the knowledge that the [jury] is best able to view the witnesses and observe their demeanor, gestures and voice inflections, and use these observations in weighing the credibility of the proffered testimony." *Seasons Coal Co., Inc. v. Cleveland*, 10 Ohio St.3d 77, 80 (1984).

**Breach of contract:**

{¶37} "Whether verbal or written, the general rule of contract formation is that there must be: (1) an offer; (2) acceptance; (3) consideration; and (4) a legal subject matter." *Camastro v. Motel 6 Operating, L.P.*, 2001 WL 435361, *2 (11th Dist. Apr. 27, 2001).

{¶38} "To establish a breach of contract claim, a party must demonstrate (1) the existence of a binding contract or agreement; (2) the non-breaching party performed its contractual obligations; (3) the breaching party failed to fulfill its contractual obligations without legal excuse; and (4) the non-breaching party suffered damages as a result of the breach." *Cafaro-Peachcreek Joint Venture Partnership v. Spanggard*, 2022-Ohio-4468, ¶ 28 (11th Dist.).

**Damages:**

{¶39} Generally, a party injured by a breach of contract is entitled to its expectation interest, which is its interest in having the benefit of its bargain by being put in as good a position as it would have been in had the contract been performed. *Nelson Sand & Gravel v. Ring*, 2002-Ohio-6571, ¶ 19 (11th Dist.). The award of money damages in a breach of contract action is designed to place the injured party in the same position that it would have been had the contract not been breached. *Id.* at ¶ 17. Thus, "damages are to be compensatory in nature and not punitive." *Id.*

Case No. 2025-G-0042

{¶40} The plaintiff "in a breach of contract action bears the burden of proving the nature and extent of [its] damages in order to be entitled to compensation." *Id*. at ¶ 18. To calculate the measure of damages in this context, the court considers the loss in value to the plaintiff of the breaching party's performance. *Victorian Room Banquet Ctr. v. Bernard*, 2006-Ohio-4946, ¶ 16 (11th Dist.); Restatement of the Law 2d, Contracts, § 347, Comment b (1981). Where the plaintiff must "pay an additional amount, such amount is a proper measure of damages." *Id.* at ¶ 16.

{¶41} "In a breach of contract case, a damage award may include costs and lost profits." *WRG Servs., Inc. v. Eilers*, 2008-Ohio-5854, ¶ 42 (11th Dist.).

> Lost profits may be recovered by the plaintiff in a breach of contract action if: (1) profits were within the contemplation of the parties at the time the contract was made, (2) the loss of profits is the probable result of the breach of contract, and (3) the profits are not remote and speculative and may be shown with reasonable certainty.

*Charles R. Combs Trucking, Inc. v. Internatl. Harvester Co.*, 12 Ohio St.3d 241 (1984), paragraph two of the syllabus.

{¶42} The existence of and amount of any lost profits is a question of fact. *WRG Servs.* at ¶ 44. The party seeking to "recover the amount he would have received for the full performance" of the contract but was prevented from performing by a breach "seeks in effect to recover as damages the profit from performance of the contract that defendant's breach prevented him from earning." *Allen, Heaton & McDonald v. Castle Farm Amusement Co.*, 151 Ohio St. 522 (1949), paragraph two of the syllabus. "In such a case," the party seeking to recover damages has the burden of proving

> not only (a) what he would have received under the contract from the performance so prevented, but also (b) what such performance would have cost him (or the value to him of relief therefrom). Unless he proves both of

Case No. 2025-G-0042

those facts, he cannot recover as damages the profits he would have earned from full performance of the contract.

*Id.* at paragraph three of the syllabus.

{¶43} A judgment may be against the manifest weight of the evidence as to the issue of damages where the party seeking damages fails to "prove what performance of the contract would have cost." *Conley v. T. & G. Plumbing & Heating, Inc.*, 1975 WL 181106, *3 (10th Dist. Jan. 7, 1975). In such a situation, the appropriate remedy is to reverse the judgment and remand the matter to the trial court for "a new trial upon the issue of damages, the issue of liability having been determined by the jury in favor of plaintiff." *Id.* at *4.

{¶44} In *Alliance Excavating, Inc. v. Triangle Real Estate Servs., Inc.*, 2009-Ohio-2761 (10th Dist.), the court addressed the issue of damages in the context of the trial court's denial of a motion for directed verdict and whether the jury verdict was against the manifest weight of the evidence. *Id.* at ¶ 12. The court said a plaintiff may only recover damages for what the plaintiff "'would have received under the contract if it had been performed, *less the value to plaintiff of his being relieved of the obligation of completing performance.*' (Emphasis added.)" *Id.* at ¶ 16, quoting *Allen, Heaton & McDonald, Inc.*, at paragraph one of the syllabus. This means that a plaintiff must establish "not only the balance due under the contract beyond what was paid, but the expenses that the plaintiff would have incurred in completing its own performance under the contract." *Id.*

{¶45} The Tenth District said that each party had presented evidence that, if believed, would prove breach of contract. *Id.* at ¶ 17. However, the court said that the record was "utterly lacking . . . any indication of the costs that [plaintiff] would have incurred had it completed performance and continued receiving payment; that is, the true

Case No. 2025-G-0042

measure of damages . . . ." *Id.* at ¶ 19. The Tenth District noted that "a contractor's planned profit margin prior to commencing a project is far too speculative a basis upon which to establish actual costs to completion." *Id.*

{¶46} Based on the lack of evidence, the Tenth District determined that it was error for the trial court to allow the case to go to the jury "without the necessary evidence to establish the measure of damages for breach of contract . . . and that any verdict rendered by the jury was as a result entirely speculative as to the amount of damages." *Id.* at ¶ 20. Given the speculative nature of the damages, the Tenth District said the trial court should have granted the directed verdict that the plaintiff "had failed to introduce sufficient evidence to support the measure of its damages." *Id.*

**Analysis:**

{¶47} First, we conclude that as to liability, the jury did not lose its way by determining that Appellants breached the contract for renovation of the 400 Washington Street property. Although there was conflicting testimony about the cause of delays in finishing the work at the property, the jury was free to determine that Appellee fulfilled its obligations under the contract as to Phases 1 and 2 before Vilk sold the property and terminated the contract prior to the commencement of Phase 3. The jury was in the best position to make factual findings relating to credibility and determine that Appellants breached the contract and failed to fully compensate Appellee, resulting in damages. Slocum's testimony established that Appellee completed Phases 1 and 2 of the project before Appellants terminated the contract due to the sale of the property, which resulted in damages. Second, we address the issue of damages. Appellants' primary argument for a directed verdict related to uncertainty in Appellee's calculations of damages, saying

Case No. 2025-G-0042

that the "numbers don't add up." But Slocum did testify to specific figures for some of his damages calculation. His assertion was that Appellants failed to compensate him for $5,000.00 related to the costs already spent for the insulation work, $14,500.00 for the framing work, $18,000.00 for the electrical, and $50,000.00 for the cancellation of Phase 3. This testimony was sufficient for the jury to determine that Appellee suffered damages because it established at least some non-speculative damages figures. In this way, this case differs from *Alliance Excavating, Inc.*, 2009-Ohio-2761 (10th Dist.). There, the entire damages calculation was speculative and "utterly lacking" from the record. *Id.* at ¶ 19. Therefore, the case was insufficient for consideration by the jury. *Id.* at ¶ 20. In this case, Appellee provided sufficient evidence of non-speculative damages intermixed with speculative damages. The trial court did not err by denying the motion for directed verdict and allow the jury to decide the case. Nor was the jury's liability verdict against the manifest weight of the evidence.

**{¶48}** However, we determine that the damages judgment of $65,000.00 was based, at least in part, on speculative damages and was therefore against the manifest weight of the evidence. *See Conley*, 1975 WL 181106, at *4 (10th Dist. Jan. 7, 1975). There was simply no evidence to support the $50,000.00 that Appellee sought for Phase 3.

**{¶49}** The contract provided that Appellants would pay $50,000.00 for the completion of Phase 3, but Phase 3 never began, and Slocum was unable to identify the expected costs for labor and materials for that phase. The failure to identify what the performance of Phase 3 would have cost Appellee is fatal to any recovery of the $50,000.00 Appellee sought for the breach of the contract. Indeed, Slocum admitted that

Case No. 2025-G-0042

he underbid the entire project, further highlighting the speculative nature of the damages for Phase 3. Appellee did not even establish that he would have made any profit at all on the completion of Phase 3. At most, Appellee presented only $5,000.00 worth of non-speculative damages relating to Phase 3 because of $5,000.00 in damages for payments to a subcontractor for insulation costs. Beyond that, Appellee failed to provide any concrete, non-speculative damages as to Phase 3. Because of this, the jury's verdict as to damages was against the manifest weight of the evidence.

{¶50} Accordingly, Appellants' first assignment of error is without merit. However, Appellants' second assignment of error has merit.

{¶51} For the foregoing reasons, the judgment of the Geauga County Court of Common Pleas is reversed, and the matter is remanded for a new trial on the issue of damages, the issue of liability having been determined.

EUGENE A. LUCCI, J.,

ROBERT J. PATTON, J.,

concur.

Case No. 2025-G-0042

# JUDGMENT ENTRY

For the reasons stated in the opinion of this court, it is the judgment and order of this court that the judgment of the Geauga County Court of Common Pleas is reversed, and the matter is remanded for a new trial on the issue of damages, the issue of liability having been determined.

Costs to be taxed against Appellee.

_____
JUDGE JOHN J. EKLUND

_____
JUDGE EUGENE A. LUCCI,
concurs

_____
JUDGE ROBERT J. PATTON,
concurs

**THIS DOCUMENT CONSTITUTES A FINAL JUDGMENT ENTRY**

A certified copy of this opinion and judgment entry shall constitute the mandate pursuant to Rule 27 of the Ohio Rules of Appellate Procedure.

Case No. 2025-G-0042